Filed 4/23/26  P. v. Bringas CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DAVID JOHNATHON BRINGAS,<br><br>    Defendant and Appellant. | D086917<br><br><br><br>(Super. Ct. No. FVI23003204) |

APPEAL from a judgment of the Superior Court of San Bernardino County, John Peter Vander Feer, Judge.  Affirmed.

Jason Szydlik, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Heather B. Arambarri, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted David Johnathon Bringas of forcible rape (Pen. Code,[1] § 261, subd. (a)(2)); forcible oral copulation (§ 287, subd. (c)(2)(A)); and false imprisonment (§ 236). The jury also found true two aggravating factors (§ 1170, subd. (b)(2)). The trial court sentenced Bringas to an aggregate prison term of 16 years. Bringas timely appealed.

Bringas asserts the trial court prejudicially erred by failing to advise the jury that the victim's capacity to consent was not relevant to the charged offenses of forcible rape and forcible oral copulation. Alternatively, Bringas contends the trial court erred by not providing an instruction on legal consent in response to a jury question. Finding no error, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

A.     *The Prosecution*

On August 7, 2022, Z.C. consumed two to four alcoholic drinks at home before going to a bar with her boyfriend, J.B. At the bar, Z.C. consumed one or two more drinks and possibly two shots. At closing time, Z.C. and her boyfriend attempted to call an Uber, but experienced difficulty with the Uber app. As the couple stood outside the bar, Bringas stopped his car in front of the bar. J.B. offered Bringas $30 and gas for a ride home. Bringas agreed and the couple got into the backseat of Bringas's car. During the drive, J.B. asked Bringas to pull over because Z.C. was not feeling well and needed to vomit. Once they were back on the road, Bringas stopped at a gas station so J.B. could buy him gas. Bringas became upset when J.B. only put two dollars' worth of gas in the car and he yelled at J.B. to get out of the car. Once J.B. was out of the car, Bringas drove away with Z.C. still in the backseat.

---

[1]     Undesignated statutory references are to the Penal Code.

Z.C. repeatedly asked Bringas to stop and go back, but Bringas told her to "shut the fuck up." Bringas then slowed down and Z.C. jumped out of the car. Bringas exited the car, grabbed Z.C., and threw her back into the car.

The next thing Z.C. remembered was "ending up in a room" and "being on the bed." Her dress was pulled up and Bringas was on top of her, having sexual intercourse with her. Z.C. told Bringas to stop multiple times, but Bringas held her arms above her head and continued. Bringas also put his hand on Z.C.'s neck and applied pressure. Bringas then turned Z.C. over onto her stomach and continued raping her. Bringas then grabbed Z.C. by her hair, threw her onto the ground and inserted his penis into her mouth. When Z.C. was back on the bed on her back, Bringas inserted his fingers into her vagina.

Some time later, there was a knock on the door and Bringas told Z.C. to "shut the fuck up" and that she needed to go. Z.C. put her clothes back on and ran out the door. Z.C. attempted to flag down motorists, but Bringas pulled up in his car next to her, grabbed her by the arm, and put her in the front seat. Bringas told Z.C. he had to get rid of her so she told him her kids and work would be looking for her. Bringas pulled over, handed her his phone, and told her to call her employer and tell them her kids were sick. Z.C. exited the car, called her employer, and told them she was in trouble. The employer called 911 and J.B. Bringas opened the car door for Z.C. to get back in the car and as Bringas walked around the car to get into the driver's seat, she ran out toward a house. Z.C. knocked on three or four doors before Bringas drove off. Z.C. flagged down a cyclist and asked him to call her cell phone number. J.B. answered and the cyclist gave him the address of a nearby house.

J.B. picked up Z.C. and took her to the emergency room. Z.C. was examined by a forensic nurse. Z.C. had soreness on her chest and genital area, scratches on her breast and arm, bruises and a scratch on her thigh, an abrasion on her knee, and a scratch and contusion on her cervix.

B.     *The Defense*

Bringas testified in his defense at trial. He said he was drinking at a bar with his brother. At around 1:30 a.m., Bringas left the bar but returned shortly thereafter to "possibly pick up a girl." On his way back to the car, he saw Z.C. and J.B. sitting on the curb. J.B. approached Bringas and asked for a ride home. J.B. offered Bringas "a lot of money" and Bringas agreed. J.B. sat in the front passenger seat and Z.C. sat in the backseat of Bringas's car.

Z.C. was not feeling well so Bringas pulled over. Z.C. tripped and fell getting out of the car. When Bringas went over to Z.C. to help her up, she told Bringas he was handsome. J.B. heard the comment, became angry, and yanked Z.C. away from Bringas. J.B. threw Z.C. back into the backseat of Bringas's car. J.B. agreed to buy gas so Bringas drove to a gas station. While J.B. was pumping gas, Z.C. told Bringas that she did not want to leave with J.B. because of the way he was treating her. J.B. returned to the car and Bringas realized he only pumped three dollars' worth of gas. Bringas and J.B. argued over the amount of gas and his treatment of Z.C. Bringas told J.B. to get out of the car and as he did, Bringas drove away.

Z.C. got into the front passenger seat and talked with Bringas. Z.C. then asked Bringas, "Do you want to fuck?" Bringas said, "Hell, yeah" and Z.C. climbed onto Bringas's lap. When they arrived at Bringas's house, Z.C. pushed Bringas against his car, groped him, and said sexual things to him. Bringas led Z.C. to his bedroom and locked the bedroom door. Z.C. then took off her clothes and performed oral sex on Bringas. Z.C. then got on the bed

and Bringas got on top of her and they proceeded to have sexual intercourse. Five minutes later, Bringas got up, told Z.C. he was hungry, and walked to the door. Z.C. told Bringas to wait and asked, "Don't you want me?" Bringas went to his drawer to look for a condom, but Z.C. told him not to worry because her tubes were tied. They proceeded to have sexual intercourse a second time.

Bringas went to the kitchen, spoke to his mom and brother, prepared a plate of food, and returned to his bedroom. Bringas and Z.C. ate. They talked for a while about Z.C.'s work, her kids, her ex-husband, and problems with J.B. They had sexual intercourse a third time. Bringas's mom banged on the bedroom door and yelled, "Get that bitch out of my house." Bringas told Z.C. they had to leave. Bringas told Z.C. to leave through the front door of the house while he left through the garage. Bringas told Z.C. to go down the street and he would meet her there. Bringas saw Z.C. wave a truck away and heard her say, "No, thank you" before getting into Bringas's car. Z.C. asked Bringas for his phone so she could call off work. Z.C. asked Bringas to drive her home, but they began to argue because Z.C. accused Bringas of stealing her shoes and cell phone. Z.C. told Bringas to pull over and she got out of the car. Bringas drove up next to Z.C., confirmed she did not want him to drive her home, and drove away.

Bringas's mother testified in his defense at trial. She stated she saw Bringas warming up food in the kitchen and saw a woman exit the bathroom and return to Bringas's room. She stated she later heard a woman laughing, giggling, and enjoying herself in Bringas's room. She banged on Bringas's door and asked, "David, what are you doing?" She then saw Bringas exit the house through the garage and get into his vehicle.

DISCUSSION

Bringas asserts that in responding to a question from the jury about consent while intoxicated, the trial court prejudicially erred in failing to instruct the jury that lack of capacity due to intoxication was irrelevant to the consent elements of forcible rape and forcible oral copulation. Alternatively, Bringas contends the trial court erred by not responding with an instruction on legal consent.

A.    *Additional Background*

After a discussion with the parties, the trial court charged the jury with several instructions, including CALCRIM No. 1000 addressing rape by force. While the jury was deliberating, it sent the trial court a note which asked, "What is the law in regards to the victim giving consent while intoxicated?" In response to the note, the trial court discussed the matter with the parties. The defense proposed the following instruction: "The prosecution must prove beyond a reasonable doubt that the alleged victim was so intoxicated that she was incapable of understanding and appreciating the nature of the act she was consenting to. And the defendant was unaware that the alleged victim was so intoxicated that she was incapable of understanding and appreciating the nature of the act she was consenting to." The prosecution objected to the proposed instruction. The court noted that the proposed instruction was from CALCRIM No. 1002, rape of an intoxicated woman, and Bringas was not charged with that offense.

The court explained that consent for the crime of forcible rape is governed by CALCRIM No. 1000 which states: "To consent, a woman must act freely and voluntarily and know the nature of the act." The court further explained that CALCRIM No. 1002 describes legal consent as: "consent given

6

freely and voluntarily by someone who knows the nature of the act involved." The court thereby observed that the two provisions are "essentially the same" in their description of "legal consent." As a result, the court indicated that the appropriate response to the jury question was to "respond with the language from [CALCRIM No.] 1000." The prosecution agreed, explaining that what the defense proposed did not accurately reflect what the prosecution had to prove. The defense recognized that CALCRIM No. 1000 offered guidance, but maintained that their proposed instruction would "help the jury correctly apply the law to the situation."

The court sent the jury the following response: "To consent, a woman must act freely and voluntarily and know the nature of the act. See Instruction [CALCRIM No.] 1000."

B.     *Legal Principles*

Pursuant to section 1138, if jurors request information on any point of law arising in the case, the information must be given. (*People v. Gonzalez* (1990) 51 Cal.3d 1179, 1212 (*Gonzalez*), superseded by statute on other grounds as stated in *In re Steele* (2004) 32 Cal.4th 682, 690.) Section 1138 imposes a "mandatory" duty to clear up any instructional confusion expressed by the jury. (*Gonzalez,* at p. 1212.)

Where "the original instructions are themselves full and complete, the court has discretion under section 1138 to determine what additional explanations are sufficient to satisfy the jury's request for information." (*People v. Beardslee* (1991) 53 Cal.3d 68, 97 (*Beardslee*); see also *People v. Davis* (1995) 10 Cal.4th 463, 522; *Gonzalez, supra*, 51 Cal.3d at p. 1213.) Our courts have repeatedly approved of responses to jury questions which refer the jury to the instructions provided by the trial court. (*Beardslee,* at p. 97; *Davis,* at pp. 521–522.)

7

We review any error under section 1138 for abuse of discretion. (*People v. Kopp* (2019) 38 Cal.App.5th 47, 65 (*Kopp*).)

C.    *Analysis*

To begin, the Attorney General contends that Bringas forfeited his claim that the trial court erred in failing to instruct the jury that incapacity to consent due to intoxication was irrelevant to the charged offenses because Bringas did not request that instruction in the proceedings below.  Instead, Bringas requested that the trial court provide an instruction based on CALCRIM No. 1002 for rape of an intoxicated woman.

Bringas asserts the claim was properly preserved when his defense attorney requested a particular instruction and the trial court denied the request.  (*People v. Giardino* (2000) 82 Cal.App.4th 454, 465 ["The defendant had requested a particular instruction, and the trial court had denied that request.  Nothing further is necessary to preserve the issue for appellate review."].)  He also contends that the trial court's response to the jury question affects his substantial rights under section 1259 and is thereby reviewable on appeal.

We agree that Bringas's claim is reviewable on appeal.  (See § 1259 ["The appellate court may also review any instruction given, refused or modified, even though no objection was made thereto in the lower court, if the substantial rights of the defendant were affected thereby."]; *Kopp, supra*, 38 Cal.App.5th at p. 66, fn. 12 ["[section 1259] govern[s] the waiver issue involving a trial court's response to a jury question . . . triggering section 1138"].)  Because Bringas's right to a fair trial would be implicated if the trial court erred in the manner Bringas alleges, we will address the merits of his argument.  (*People* v. *Frye* (1998) 18 Cal.4th 894, 1007,

8

disapproved on another ground by *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

Here, the jury inquired about the law on consent while intoxicated. In response, the trial court provided the jury full and complete instructions by explaining that "to consent, a woman must act freely and voluntarily and know the nature of the act" and referring them back to CALCRIM No. 1000. The trial court considered how best to aid the jury and reasonably concluded that the defense's proposed instruction which addressed consent while intoxicated was not appropriate because Bringas was not charged with rape of an intoxicated person.

Bringas now asserts that the "correct response" to the jury's question was that "lack of capacity due to intoxication is irrelevant to forcible rape and forcible oral copulation's lack of consent elements." Notably, Bringas agrees that the court's answer did "not technically misstate the law." Thus, it is undisputed that the jury was properly instructed on consent as it related to the charged offenses. (*Gonzalez, supra*, 51 Cal.3d at p. 1212 [the court need not elaborate on the standard instructions].) The court's instructions were full and complete, and the court acted within its discretion in directing the jury back to the relevant instructions. (*People v. Hill* (1992) 3 Cal.App.4th 16, 25–26, [trial court responded to question about conspiracy by directing jury to reread conspiracy instructions and consider them in the light of all the other instructions], disapproved on another ground by *People v. Nesler* (1997) 16 Cal.4th 561, 582, fn. 5.)

Alternatively, Bringas asserts the trial court erred by failing to respond to the jury question with an instruction on legal consent as defined in section 261.6. We find no error as the trial court did instruct on legal consent as defined in section 261.6. (See § 261.6 ["The person must act freely and

9

voluntarily and have knowledge of the nature of the act or transaction involved."].) In considering Bringas's proposed response to the jury question, the trial court explained, "legal consent within [CALCRIM No.] 1002 . . . is essentially the same as [CALCRIM No.] 1000" before responding with the language from CALCRIM No. 1000. Both CALCRIM Nos. 1000 and 1002 define legal consent as provided by section 261.6. (See CALCRIM No. 1000 ["To *consent,* a woman must act freely and voluntarily and know the nature of the act."], CALCRIM No. 1002 ["Legal consent is consent given freely and voluntarily by someone who knows the nature of the act involved."].) Moreover, Bringas agrees the "court's answer did not technically misstate the law." We find no abuse of discretion in the trial court's response and decision to refer the jurors back to the instructions which defined legal consent as it related to the charged offenses.

Additionally, we do not find any possible prejudice in the trial court's reference to the original jury instructions as opposed to Bringas's requested instruction or his proposed explanation on appeal. (See *Beardslee, supra*, 53 Cal.3d at p. 97 [no prejudice where subject of question covered by instructions provided].)

DISPOSITION

The judgment is affirmed.

O'ROURKE, Acting P. J.

WE CONCUR:

DATO, J.

DO, J.

11